IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHEEM J. BRENNERMAN, | : | Civil No. 3:24-cv-2029 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN, FCI-ALLENWOOD LOW, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Raheem Brennerman ("Brennerman") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the Federal Bureau of Prisons' ("BOP") authority to deny the accrual and application of First Step Act ("FSA")[1] time credits. (Doc. 1). The petition is ripe for disposition and, for the reasons set forth below, the Court will deny the habeas petition.

## I. Background

Brennerman is serving a 168-month term of imprisonment imposed by the United States District Court for the Southern District of New York for criminal contempt, conspiracy to commit bank and wire fraud, bank fraud, and wire fraud. (Doc. 9-5, Public Information Inmate Data). His projected release date is October 16, 2029, via good conduct time release. (*Id.*).

---

[1] The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018).

## II.   Discussion

### A.   First Step Act Time Credits

The FSA was enacted by Congress in 2018. A primary goal of the FSA is to reduce recidivism of federal prisoners upon their release from imprisonment. 18 U.S.C. § 3632(a). Under the FSA, the BOP was required to develop "a risk and needs assessment system" for federal prisons and to tailor recidivism-reduction programming to each inmate's "specific criminogenic needs." 18 U.S.C. § 3632(a)(3). Thus, the BOP developed the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" or "PATTERN" system. *DeFoggi v. United States*, No. 20-3889-NLH, 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020). The PATTERN tool "determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk." *Id.* (internal quotation marks omitted). The FSA required the BOP to complete an initial PATTERN assessment of each inmate and "begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination" within 180 days of the system's release date, January 15, 2020. 18 U.S.C. § 3621(h)(1)(A).

Eligible inmates who "successfully participate in recidivism reduction programs or productive activities" earn time credits, which may be "applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.44(b). Time credits applied toward early supervised release result in a shorter duration in BOP custody.

Prerelease custody consists of home confinement or a residential reentry center ("RRC") in a BOP-sponsored facility. 18 U.S.C. § 3624(g)(2)(A)-(B).

Operating under interim rules, on November 25, 2020, the BOP issued a Notice of Proposed Rulemaking, seeking to implement and clarify provisions for earning and application of FSA time credits.[2] After a period for public comment, on January 19, 2022, the BOP published its final rule (the "Final Rule"). Under the Final Rule, inmates who have "maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau" earn 15 days of time credits for every 30 days they successfully participate in programming, and individuals with a medium or high PATTERN score earn 10 days of credits for every 30 days. 28 C.F.R. § 523.42(c)(1)-(2); 18 U.S.C. § 3632(d)(4)(A). The FSA permits eligible inmates to earn time credits toward early transfer to supervised release, capped at a one-year maximum. 18 U.S.C. § 3624(g)(3).

In addition to the Final Rule governing the FSA, the BOP amended its Program Statement 5410.01 ("PS 5410.01")[3] to set internal policies and practices implementing the award of FSA time credits. The policies define the statutory term "successfully participate" in FSA recidivism reduction programs and activities by excluding the following:

---

[2] Federal Register, FSA Time Credits, https://www.federalregister.gov/documents/2020/11/25/2020-25597/fsa-time-credits (last visited Jan. 3 2025).

[3] Available at Federal Bureau of Prisons, Policy & Forms, https://www.bop.gov/resources/policy_and_forms.jsp.

3

    (i)      Placement in a Special Housing Unit; Inmates in Disciplinary Segregation status will not be considered to be "successfully participating." Inmates in restrictive housing for Administrative Detention shall obtain [time credits] if they otherwise remain in earning status under the policy[;]

    (ii)     Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

    (iii)    Temporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.). In the case of placement or transfers outside the institution (e.g., furlough, writ, escorted trip, outside hospital placement, etc.), an inmate will continue to earn [time credits] if they are in the institution for any part of the day.

    (iv)    Placement in mental health/psychiatric holds; or

    (v)     "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment). An inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Further, an inmate is considered to be opting out if the inmate refuses to participate in or fails to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's assessment system.

PS 5410.01 at 4-5, *supra*, n. 4. While participation in time-credit earning programs is voluntary, "opting out" can result in loss of the ability to earn time credits. *Id.*

    **B.**    **The BOP's Calculation of Brennerman's FSA Time Credits**

As of December 1, 2024, Brennerman has earned 205 days of FSA time credits. (Doc. 9-7, FSA Time Credit Assessment). The BOP disallowed Brennerman 1,685 days

4

because he was in "refusal status" for the BOP's Inmate Financial Responsibility Program ("IFRP"). (*See id.*, noting that Brennerman's credits cannot be applied because he "[d]eclined programming"). The IFRP assists inmates in satisfying their financial obligations, such as special assessments under 18 U.S.C. § 3013, court-ordered restitution, fines and court costs, student loans, or tax liabilities.[4] Although the program is voluntary, if an inmate refuses to participate in the program, "the inmate will not earn [time credits]." PS 5410.01 at 11, *supra* n. 3.

### C. Disallowed FSA Time Credits

Brennerman challenges the BOP's refusal to credit him for 1,685 days. (Doc. 1). In response, Respondent argues that Brennerman refused to participate in the IFRP and, thus, the BOP properly denied him FSA time credits. (Doc. 9).

The Attorney General is responsible for the collection of criminal fines. 18 U.S.C. § 3612(c). The time and method of payment is governed by 18 U.S.C. § 3572(d)(1), which does not require a sentencing court to set a payment schedule, nor does it preclude a sentencing court from deferring the issue of payment schedule to the BOP through its IFRP. *See Douglas v. Martinez*, 416 F. App'x 168, 170 (3d Cir. 2010). The BOP established the IFRP to encourage sentenced inmates to meet their legitimate financial obligations. 28 C.F.R. § 545.10.

---

[4] Inmate Financial Responsibility Program, BOP Program Statement No. P5380.08 at 1, 5-8, available at https://www.bop.gov/policy/progstat/5380_008.pdf (last visited Jan. 3, 2025).

5

Federal regulation 28 C.F.R. § 545.10 "explicitly permits the BOP to assist the inmate in developing a financial plan for meeting his or her legitimate financial obligations." *Id.* (internal quotation marks omitted). Under the IFRP, "unit staff" develop a financial plan for each inmate and monitor his or her progress in adhering to that plan. 28 C.F.R. § 545.11. In doing so, they conduct an independent assessment of inmates' abilities to pay by reviewing their financial obligations and "all available documentation." 28 C.F.R. § 545.11(a). The IFRP typically requires a minimum payment of $25.00 per quarter. 28 C.F.R. § 545.11(b)(1). The minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources. 28 C.F.R. § 545.11(b)(1).

"Prisoners are not entitled, constitutionally or otherwise, to any of the benefits agreeing to participate in the IFRP would provide," and the "consequences of choosing not to participate in the IFRP do not amount to constitutional violations." *Id.* Once an inmate agrees to participate in the IFRP, the BOP is authorized to help him develop a financial plan and monitor his progress in meeting his financial obligations. *See* 28 C.F.R. § 545.11. In monitoring the inmate's progress, the BOP may recalculate or modify the inmate's financial plan. *See Duronio v. Werlinger*, 454 F. App'x 71, 73 (3d Cir. 2011) ("We are aware of no holding that would suggest that an inmate is prohibited from contributing additional monies to restitution he owes, especially when doing so—and being placed on IFRP status—confers benefits that would otherwise be lost."); *U.S. v. Lemoine*, 546 F.3d 1042, 1050 (9th

6

Cir. 2008) (holding that "the BOP has authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP.").

Inmates who "refuse to participate in the Inmate Financial Responsibility Program (IFRP) shall not receive incentive awards for participation/completion in EBRR's while on refuse status." PS 5220.01(8).

Respondent submitted the Declaration of Joshua M. Bower, Senior Attorney at the BOP. (Doc. 9-4, Declaration of Joshua M. Bower ("Bower Decl.")). In reliance on a computerized index maintained in the ordinary course of business by the BOP, Attorney Bower indicates that Brennerman was disallowed 1,685 days of FSA time credits because he "declined programming." (*Id.* at p. 2 ¶ 5; *see also* Doc. 9-7). The FSA Time Credit Assessment Report reveals that Brennerman was in IFRP refusal status because he declined programming. (Doc. 9-7). The record before the Court confirms that Brennerman has refused to participate in the IFRP. Therefore, the Court finds that the BOP properly denied him FSA time credits.

### III.   Conclusion

The Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). A separate Order follows.

_____
Robert D. Mariani
United States District Judge

Dated: January 8, 2025